IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

JOSHUA MOORE,           )
    Plaintiff,          )
        v.              )      Civil Action No. 3:22-CV-17 (RCY)
                        )
PROGRESSIVE UNIVERSAL   )
INSURANCE COMPANY, *et al.*, )
    Defendants.         )
                        )

**MEMORANDUM OPINION**

This matter is before the Court on cross-motions for Summary Judgment filed by Plaintiff Joshua Moore ("Moore") (ECF No. 20) and Defendant Progressive Universal Insurance Company ("Progressive") (ECF No. 22). The motions have been briefed, and the Court dispenses with oral argument because the facts and legal contentions are adequately presented in the materials before the Court, and oral argument would not aid in the decisional process. E.D. Va. Loc. Civ. R. 7(J). For the reasons stated herein, the Court grants Summary Judgment to Plaintiff Moore and denies Summary Judgment to Defendant Progressive as to this declaratory judgment action.

**I. FACTS**

The parties adopted and stipulated to a Joint Statement of Undisputed Facts in their respective Motions for Summary Judgment (hereinafter, "Joint Statement of Facts"). (*See* Pl.'s Mem. Supp. Summ. J. 2, ECF No. 21; Def.'s Mem. Supp. Summ. J. 2, ECF No. 23.) As such, the Court summarizes these facts below, and incorporates by reference the facts outlines in the parties' respective briefs.

On April 20, 2019, Plaintiff Joshua Moore was working as a wrecker operator for Robinson's Towing and Recovery, Inc. (Joint Statement of Facts ¶ 1.) On that date, Joseph

Zimmerman owned an RV that was insured under Progressive Motor Home Insurance Policy number 929029759 (the "Progressive Policy"). (*Id*. ¶ 2–3.) The Progressive Policy provides, in relevant part, that the insurer would pay, in accordance with Va. Code Ann. Section 38.2-2206, damages which an "insured" or an "insured's" legal representative is legally entitled to recover from the owner or operator of an uninsured or underinsured motor vehicle due to bodily injury sustained by the insured and caused by an accident, and property damage caused by an accident. (*Id*. ¶ 42.) The Progressive Policy defines "insured," in part, as any person "occupying" the covered automobile. (*Id*.) The Virginia Code section governing such policies, Va. Code Ann. Section 38.2-2206, defines "insured" for the purpose of uninsured/underinsured coverage as, in relevant part, "…any person who uses the motor vehicle to which the policy applies, with the expressed or implied consent of the named insured…." (*Id*. ¶ 44.)

On the day in question, Zimmerman's RV became disabled on the right shoulder of northbound Interstate 95, approximately one-half mile north of Parham Road in Henrico County, Virginia. (*Id*. ¶ 2.) In response, Zimmerman contacted the RV's manufacturer, who in turn called Robinson's Towing and requested a tow of the RV to the service station. (*Id*. ¶ 6–7.) Plaintiff later arrived in a wrecker owned by Robinson's Towing, parking in front of Zimmerman's RV and activating the amber lights on the wrecker. (*Id*. ¶ 8.)

Zimmerman handed Plaintiff the keys to the RV and gave him permission to enter the vehicle for the purpose of towing it from the scene. (*Id*. ¶ 9–10.) Plaintiff entered the vehicle, sat in the driver's seat, inserted the key into the ignition and attempted to start the vehicle. (*Id*. ¶ 11.) Finding that it would not start, Plaintiff engaged the RV's parking brake and activated its emergency flashers. (*Id*. ¶ 11–12.) Plaintiff then retrieved a tow light—a bar equipped with flashing red lights used to notify motorists that the vehicle is under tow—from Plaintiff's own

wrecker and secured it to the rear of the RV with bungee cords. (*Id.* ¶ 13–15.) He then turned on the flashing lights and secured the mud flap to the rear of the vehicle. (*Id.* ¶ 16.)

While lying next to the RV to prepare it for towing, Plaintiff observed that a crank pulley had become disengaged from the vehicle, rendering the RV inoperable. (*Id.* ¶ 18.) Plaintiff proceeded to manipulate components of the RV in order to prevent damage to it and further facilitate the process of towing. (*Id.* ¶ 19.) After removing and securing the RV's drive axle, Plaintiff used frame forks attached to his wrecker to lift the front wheels of the RV approximately one foot off the ground. (*Id.* ¶ 22.) He then reentered the RV, sat in the driver's seat, and disengaged the RV's parking brake. (*Id.*)

After exiting the RV and returning to his wrecker, Plaintiff drove his wrecker and the RV approximately twenty to thirty feet forward and to the right. (*Id.* ¶ 23.) He did so in order to give himself more space to maneuver on the driver's side of the RV without standing in the right travel lane of I-95. (*Id.*) He then reentered the RV, sat in the driver's seat, and reengaged the parking brake. (*Id.* ¶ 24.) He again exited the RV and used the frame forks attached to his wrecker to lower the front wheels of the RV back to the ground. (*Id.*) From his wrecker, he retrieved parts of the wheel grids needed to attach the RV's front wheels to the wrecker for safe long-distance towing. (*Id.* ¶ 25.) When properly assembled, the RV's front tires would rest on the wheel grids while the wrecker towed the vehicle. (*Id.*)

Because of the labor required to handle the wheel grids, Plaintiff called for assistance and his employer dispatched Steven Purdon to the scene. (*Id.* ¶ 26.) With the help of Purdon, Plaintiff attached the front aspect of the wheel grids to the hydraulic T-bar on the wrecker, and eventually lifted the front wheels of the RV off the ground. (*Id.* ¶ 27.)

Plaintiff reentered driver's side of the RV, released the parking brake, positioned the RV's steering wheel in the straight-ahead position, and secured the position of the steering wheel with the driver's side seatbelt. (*Id*. ¶ 28.) Once again, Plaintiff exited the RV and used the hydraulic on his wrecker to raise the RV to the proper towing height. (*Id*. ¶ 29.) He then retrieved two straps from his wrecker, handing one to Purdon to secure the passenger front tie to that wheel grid, and taking the other himself, intending to secure the driver's side front wheel to that wheel grid. (*Id*. ¶ 30.) Plaintiff knelt down on one knee, draping both of his arms over the driver's side front tire of the RV in order to place the strap on the proper part of the tire. (*Id*. ¶ 31.)

While Plaintiff was touching the tire, Robert Longnecker, a motorist driving a 2016 Buick sedan northbound on I-95, lost control of his vehicle. (*Id*. ¶ 32.) Longnecker veered onto the right side of the road, striking Plaintiff before fleeing the scene of the accident. (*Id*.) Plaintiff sustained serious and permanent injuries as a result of this accident. (*Id*. ¶ 35.) Those injuries included extensive fractures to his face, skull, and body, collapsed lungs, brain hemorrhaging, a traumatic brain injury, and the functional and cognitive defects associated with a TBI. (Pl. Mem. Supp. Mot. Summ. J. 10.) While Plaintiff survived the collision, he underwent multiple surgeries, spent nearly a month in the hospital, spent several weeks in a rehabilitation facility, and incurred $1,354,281.88 in medical bills and lost wages. (*Id*.)

On or about January 26, 2020, Longnecker passed away. (*Id*. ¶ 36.) On or about March 23, 2021, George W. Gray III, Esq., qualified as Administrator of the Estate of Robert Longenecker. (*Id*.) On March 26, 2021, Plaintiff filed a personal injury claim against George W. Gray III, as Administrator for the Estate of Robert Longnecker, Deceased, and John Doe, in the Henrico County Circuit Court, styled *Joshua Moore v. George Gray, Administrator of the Estate of Robert Longnecker, Deceased, et al.*, Case. No. CL21002250-00. (*Id*. ¶ 37.) The Buick sedan

Longnecker was driving when he struck Plaintiff was insured under GEICO automobile policy No. 4000750028, which provided liability insurance with limits of $100,000 per accident and $300,000 per occurrence. (*Id*. ¶ 39.) The parties agree that Plaintiff suffered "bodily injury…caused by the operation or use of an underinsured motor vehicle…" within the meaning of the GEICO policy and Virginia Code § 38.2-2206(A) and (B). (*Id*.) The Progressive Policy issued to Zimmerman provides underinsured motorists coverage with limits of $250,000.00. (*Id*. ¶ 40.)

The parties' remaining dispute is whether Plaintiff Moore was an "insured" within the meaning of the Uninsured/Underinsured Motorists Coverage endorsement to the Progressive Policy and Virginia Code § 38.2-2206(B). (*Id*. ¶ 41.) The parties agree that if Plaintiff was "occupying" or "using" the RV, he would be entitled to underinsured motorists benefits under the Progressive Policy in the event that he obtains a judgment against Locknecker's estate in accordance with the Virginia Code. (*Id*. ¶ 45.)

## II. PROCEDURAL HISTORY

This action commenced on December 16, 2021, when Plaintiff Joshua Moore filed a Complaint for Declaratory Judgment in the Circuit Court for Henrico County, Virginia. (See ECF No. 1-1, 2–13.) Though the Complaint for Declaratory Judgment filed in state court names several additional defendants, including GEICO Insurance Company, The Peninsula Insurance Company, Northern Neck Insurance Company, Joseph Zimmerman, and George W. Gray III, Administrator of the Estate of Robert Longnecker, Plaintiff asserts no claims against these defendants and seeks no relief from them. On January 10, 2022, Defendant Progressive Universal Insurance Company ("Progressive") filed a Notice of Removal to this Court. (ECF No. 1.) Simultaneous to the Notice of Removal, Progressive answered Plaintiff's Complaint and put forth affirmative defenses. (ECF No. 4.) On April 8, 2022, the Court issued an order granting Plaintiff's Stipulation of Dismissal

of this action without prejudice against Defendants Gray and Zimmerman. On June 13, 2022, the Court ordered that defendants GEICO, Northern Neck Insurance Company, and the Peninsula Insurance Company need not participate further in the case, but emphasized that such defendants would be bound by the outcome of this matter with respect to whether or not the Progressive Policy provides underinsured motorist coverage to Plaintiff. (ECF No. 16). On July 15, 2022, Plaintiff Moore and Defendant Progressive each filed a Motion for Summary Judgment and a Memorandum of Support (ECF Nos. 20, 21, 22, 23). This action was assigned to the undersigned Judge on August 22, 2023.

### III. LEGAL STANDARD

Summary judgment is appropriately granted when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute about a material fact is genuine when the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The party moving for summary judgment "bears the initial burden of demonstrating the absence of any genuine issue of material fact." *DiSciullo v. Griggs & Co. Homes*, 2015 WL 6393813, at *4 (E.D.N.C. Oct. 22, 2015). The burden then "shifts to the nonmoving party to show that there are genuine issues of material fact." *Emmett v. Johnson*, 532 F.3d 291, 297 (4th Cir. 2008). "Evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [non-movant's] favor." *Anderson*, 477 U.S. at 255; *see United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962) ("On summary judgment the inferences to be drawn from the underlying facts contained in [affidavits, attached exhibits, and depositions] must be viewed in the light most favorable to the party opposing the motion.").

"Furthermore, a 'material fact' is a fact that might affect the outcome of a party's case." *Marlow v. Chesterfield Cty. Sch. Bd.*, 749 F. Supp. 2d 417, 426–27 (E.D. Va. 2010) (citing *Anderson*, 477 U.S. at 247–48). "Whether a fact is considered to be 'material' is determined by the substantive law, and '[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.'" *Id.* at 428. "In ruling on a motion for summary judgment, the court does not resolve the dispute itself; instead, it finds only that there is sufficient evidence of the dispute requiring that 'the parties' differing versions of the truth' be resolved at trial." *Diprete v. 950 Fairview St., LLC*, No. 1:15CV00034, 2016 WL 6137000, at *2 (W.D. Va. Oct. 21, 2016) (citing *Anderson*, 477 U.S. at 248–49). "If the evidence as a whole is susceptible of more than one reasonable inference, a jury issue is created and a motion for judgment as a matter of law should be denied." *Myrick v. Prime Ins. Syndicate, Inc.*, 395 F.3d 485, 489–90 (4th Cir. 2005). When both parties have moved for summary judgment, the Court must review "each motion separately on its own merits to determine whether either of the parties deserves judgment as a matter of law." *Republic W. Ins. Co. v. Williams*, 212 Fed. App'x. 235, 237 (4th Cir. 2007).

## IV. DISCUSSION

As a matter of law, the parties agree that Plaintiff Moore could be entitled to underinsured motorist benefits under the Progressive Policy in one of two ways. First, Moore would qualify for insurance if he was "using" Zimmerman's RV, as required by Virginia Code §38.2-2206, at the time of the collision. Second, Moore would qualify for insurance if he was "occupying" the RV, per the language of the Progressive Policy. This Court considers the parties' arguments pertaining to both "use" and "occupy" in turn.

A. "Use"

Virginia Code § 38.2-2206(B), the Commonwealth's uninsured motorist statute, defines "insured" as "any person who uses the motor vehicle to which the policy applies, with the expressed or implied consent of the named insured…." The "critical inquiry" in determining whether a person has 'used' the vehicle is "whether there was a causal relationship between the incident and the employment of the insured vehicle as a vehicle." *Slagle v. Hartford Ins. Co.*, 594 S.E.2d 582, 585 (Va. 2004).

Plaintiff argues that Moore's numerous and extensive interactions with the RV in the moments leading up to the collision satisfy the definition of "use" under Va. Code Ann. § 38.2-2206(B). (Pl.'s Mem. Supp. Summ. J., 14–15.) Plaintiff cites *Slagle v. Hartford Ins. Co.*, a case out of the Supreme Court of Virginia, for the proposition that "[u]se of a vehicle is not restricted to its transportation function." *Slagle*, 594 S.E.2d at 586. Plaintiff observes that Moore's preparations to tow the RV required entering it, moving it twenty to thirty feet, operating the parking brake, positioning the steering wheel, and attempting to start the engine. (Pl.'s Mem. Supp. Summ. J., 14–15.) Plaintiff asserts that each of these actions involved the use of the RV and its equipment to complete an integral part of Plaintiff's mission to tow the vehicle to a service station for repairs. (*Id*. 15–16.) Further, Plaintiff points out, Moore was touching the wheel of the RV when struck, and he intended to reenter the vehicle once successfully towed to the service station. (*Id*. 19, 20–21.) The confluence of these factors strongly aligns with prior Supreme Court of Virginia rulings finding that an individual claiming insurance coverage "used" a motor vehicle. *See e.g. Great American Ins. Co. v. Cassell*, 389 S.E.2d 476 (Va. 1990) (finding that an injured firefighter was using a fire truck although he was standing twenty to twenty-five away from it); *Edwards v. Government Employee Insurance Company*, 500 S.E.2d 819 (Va. 1998) (holding that

an injured person changing a tire on a disabled vehicle when struck was using the vehicle); *Randall v. Liberty Mut. Ins. Co.*, 496 S.E.2d 54 (Va. 1998) (holding that an injured highway worker placing lane closure signs on the road was using his employer's vehicle even though he was several feet away from it).

Defendant Progressive claims that, when Plaintiff was struck, he was not using the RV "as a vehicle" and thus was not an "insured" within the meaning of Va. Code Ann. § 38.2-2206(B). (Def.'s Mem. Supp. Summ. J. 13, 15.) Throughout the period when Moore interacted with the vehicle, the RV was disabled and thus unable to fulfill its purpose as a vehicle. (*Id.*) Further, Plaintiff used his own wrecker's equipment, not the RV's, to secure the vehicle for towing. The RV itself lacked specialized safety equipment, and thus was not equipped to aid Plaintiff in his mission to tow the RV for repairs. (*Id.* 17.)

The Supreme Court of Virginia established general guidelines for analyzing "use" in the context of Virginia Code § 38.2-2206(B), including that (1) "[t]he injured person must be using a vehicle as a vehicle and as an integral part of [the user's] mission"; (2) "[a]ctual use of the vehicle as a vehicle is not restricted to its transportation function"; and (3) "[u]se of the vehicle need not be the direct, proximate cause of the injury in the strict legal sense." *Bratton v. Selective Ins. Co. of Am.*, 776 S.E.2d 775, 783 (Va. 2015) (quoting *Slagle*, 594 S.E.2d at 586). Anticipating "the infinite variety of factual patterns in which the question arises," the Supreme Court of Virginia declined to further define the parameters of the terms "use" or "using" a vehicle for the purposes of a motor vehicle insurance policy. *Id*.

The Supreme Court of Virginia most recently analyzed "use" in *Bratton v. Selective Insurance Company of America*, 776 S.E.2d 775, 783 (Va. 2015). In *Bratton*, a paving superintendent at a construction zone regularly used his pickup truck as "a safety tool" by placing

9

it between the workers and the traffic, outfitting it with a flashing and spinning safety strobe light, turning on its headlights and hazard lights, and periodically moving it to remain near workers on the site. *Id.* at 778. When a dump truck operator working on site exited his dump truck to check for spillage, he was struck and killed by a drunk driver. *Id*. The Court determined that the dump truck operator was "using" the paving superintendent's pickup truck at the time of accident, although the dump truck operator was approximately 200 feet away from the pickup when he was struck by the passing car. *Id*. at 784. Because the pickup's purpose was to protect the workers, functioning as "a rolling barricade . . . among all the other safety equipment at the [jobsite]," and because its equipment made it a specialized vehicle "designed to be used for more than simply transportation," the worker was deemed to be using it for his road construction mission. *Id*.; *see also Randall v. Liberty Mutual Ins. Co.*, 496 S.E.2d 54, 54, 57 (Va. 1998) (holding that a construction worker was using his pickup truck to aid in his mission of laying road signs because it was providing safety to him through equipment, including a specialized yellow warning light). Therefore, the Court held that the dump truck operator and his estate were entitled to un- or under- insured motorist coverage. *Id.* at 778, 783.

       The Court finds that the instant case is very similar to *Bratton*. By securing the tow lights on the RV and attaching frame forks to connect the RV to the wrecker, Plaintiff Moore outfitted the RV to both become a specialized vehicle used for safety, and to regain to capability to function as a vehicle itself. Like in *Bratton*, where the construction supervisor activated hazard lights on his vehicle to illuminate the work site, Plaintiff Moore secured his tow light bar to the RV in order to increase safety during his mission. *See Bratton*, 776 S.E.2d at 777; *see also* Pl.'s Mem. Supp. Summ. J. 3–4; Def.'s Mem. Supp. Summ. J. 3–4. The facts of this case are arguably stronger than those in *Bratton*. In *Bratton*, the injured party never entered the pickup truck subject to the

insurance policy, had no intention of doing so, and likely never made physical contact with the truck. *See Bratton*, 776 S.E.2d at 777. In contrast, Moore entered the RV four times prior to the collision, planned to reenter it once it was successfully towed, and was touching the wheel to prepare the vehicle for movement when he was struck. (Joint Statement of Facts ¶¶ 11–32.)

"Use" of a vehicle is not limited to driving the vehicle. *See Bratton*, 776 S.E.2d at 783. The Virginia Supreme Court confirmed in *Bratton* that use of a vehicle in a manner for which it was designed or equipped is sufficient to trigger Va. Code § 38.2-2206. *Id*. at 784; *see also Randall*, 496 S.E.2d at 56 (holding that a road work employee was "using" a company truck parked on the side of the road because he was using the vehicle's safety equipment when he was struck). Moore's actions on and about the RV prior to the accident indicated an intention to move the vehicle from one location to another, as well as an intention to simultaneously employ the stationary RV as a bright, obvious hazard signal to the oncoming I-95 traffic. The fact that Plaintiff outfitted the RV with the wrecker's own lights is immaterial, as the tow light bar could only be effective if attached to the RV and would have aided Plaintiff's mission to tow the RV to a service station. When Moore secured the wrecker's tools on the RV, that equipment became the RV's equipment because its utility was inextricable from its placement on the RV.

Critically, exercise of *control* over a vehicle is also *use* of a vehicle as contemplated by §38.2-2206. In *Slagle*, the plaintiff never entered or touched the underinsured tractor-trailer, but rather directed the movements of the vehicle using hand signals. 594 S.E.2d 582, 587. The Court determined that Slagle's hand signals assisting the driver "were an integral part of Slagle's mission," and thus Slagle had "used" the tractor-trailer. *Id*. In the present case, Moore quite literally controlled the RV. At the time of the accident, the RV was attached to Moore's wrecker. Moore operated the RV's parking brake, turned and secured its steering wheel in a particular

position, and successfully moved the RV twenty to thirty feet. (Joint Statement of Facts ¶¶ 12, 23, 28.) Unlike hand signals, which require the cooperation of a driver to exert effective control, Plaintiff's actions ensured that he physically and independently controlled parts of the RV throughout his encounter with the vehicle. Persuasive authority from the Fourth Circuit echoes the principle that "a towed vehicle is a 'used' vehicle." *Bray v. Ins. Co. of Pa.*, 917 F.2d 130, 133 (4th Cir. 1990) (quoting *Am. Fire & Cas. Co. v. Allstate Ins. Co.*, 214 F.2d 523, 524–25). For example, a towed jeep moving on its own running gear was "used" within the meaning of its insurance policy because the situation was "within the contemplation" of the contracting parties. *Am. Fire & Cas. Co.*, 214 F.2d at 524–25. For the same reason, a boat was "used" when towed down a highway. *See State Farm Fire & Cas. Co. v. Pinson*, 984 F.2d 610, 612 (4th Cir. 1993).

Citing *Pennsylvania National Mutual Casualty Ins. Co. v. Bristow*, 150 S.E.2d 125 (Va. 1966), Defendant Progressive asserts that relevant precedent construes the concept of "occupying" more broadly than "use." (*See* Def.'s Mot. Supp. Summ. J. 15.) Defendant argues that this implies that one cannot "use" a vehicle without also "occupying" it. *Id*. This Court disagrees with this analysis. *Bristow's* language does not position "occupying" as an extension of "use," but rather as an alternative to it. *Bristow* explains that the relevant insurance policy defined the word 'occupying' "to include those who are 'in or upon or entering into or alighting from' the vehicle." *Id*. at 128. The case cited by Defendant rests its analysis on a section of the Virginia Code that has since been repealed and replaced by § 38.2, the statute at issue in this case.[1] Today, precedent

---

[1] The opinion on which Defendant relies only briefly discusses "use" in the context of Va. Code § 38.1-381, a statute repealed in 1986 and replaced by the code section at issue in this case, Va. Code § 38.2, which provides coverage to those who permissively used the insured vehicle or were guests therein. *Id.* More recently, courts have interpreted today's statute, § 38.2, more expansively, as demonstrated by the analysis of "use" in *Bratton* and *Slagle*. Even so, Virginia courts urged a liberal interpretation of § 38.1-381, indicating that even then courts were not inclined to adopt Defendant's narrow interpretation of "use". *See Nationwide Mut. Ins. Co. v. Clark*, 194 S.E. 699, 700 (Va. 1973) ("…this court has consistently held that the [un/underinsured motorist statutes] must be liberally interpreted to afford relief to the injured."); *see also Grossman v. Glens Falls Ins. Co.*, 176 S.E.2d 318, 320 (Va. 1970) ("The

consistently regards the question of whether an individual is "using" a vehicle and the question of whether they are "occupying" a vehicle as separate and distinct. *See Newman v. Eerie Ins. Exchange*, 507 S.E.2d 348, 350 (Va. 1998) (finding that the injured party was using but not occupying the vehicle); *see also Edwards*, 500 S.E.2d at 821 (addressing "occupying" and "use" separately and applying different factors to each question).

Because Plaintiff Moore controlled the RV by attaching it to his wrecker, used the RV and its adopted equipment as a critical part of his mission to tow it, and entered and planned to reenter the vehicle, the Court finds that, when he was struck, he was using the RV within the meaning of Va. Code § 38.2-2206.

## B. "Occupying"

The Court now turns to its analysis of the Progressive Policy's purported requirement that an insured "occupy" a vehicle. The policy defines "occupying" as "in; upon; or getting in, on, or out or off…" of the covered automobile. (Def.'s Mem. Supp. Summ. J. 8–9.) Because the Court has already determined that Moore "used" the vehicle and is thus entitled to coverage, he need not necessarily "occupy" the vehicle also to be entitled to coverage.[2] Nonetheless, out of an abundance of caution, the Court will engage with the analysis of whether Moore "occupied" the vehicle, to determine whether an additional basis for coverage exists.

---

Uninsured Motorist Law was enacted for the benefit of injured persons, is remedial in nature, and is liberally construed so that the purpose intended may be accomplished.").

[2] Under Virginia law, the Progressive Policy must be construed to extend coverage to anyone who "uses" the covered auto, even though "use" is not explicitly stated in the policy. When disputes over automobile insurance policy language arise, Virginia views the statute as the controlling agent and incorporates it into any conflicting policy. *See Bryant v. State Farm Mut. Auto. Ins. Co.*, 140 S.E.2d 817, 819 (Va. 1965); *State Farm Mut. Auto. Ins. Co. v. Duncan*, 125 S.E.2d 154, 157 (Va. 1962). Because the Policy offered less coverage than was required under state law, that policy must be read in conjunction with Va. Code § 38.2 and cannot as a matter of law limit the amount of coverage required by the statute. As such, Plaintiff was an insured whether he was "using" or "occupying" the RV.

Plaintiff contends that he occupied the RV several times before the incident, including when he climbed inside to release the parking brake before towing. (Pl.'s Mem. Supp. Summ. J. 27–28.) When struck, he was securing a strap to the RV's front driver side tire, with his hands and arms touching the tire. (*Id.*) Plaintiff intended to re-occupy the RV once he towed it to the service station. (*Id.* 7.) Because he was preparing to tow the RV, his actions were vehicle-oriented. (*Id.* 27–28.)

Defendant Progressive analogizes Plaintiff Moore to the plaintiff in *Bristow*, who leaned over an engine to check the wiring; to the plaintiff in *Edwards*, who was changing a tire; and to the plaintiff in *Newman*, who was crossing the street to board a school bus. (Def.'s Mem. Supp. Summ. J. 11–12.) In each of these cases, the presiding court determined that the plaintiffs were not "occupying" a vehicle at the time of their injuries. (*Id.* 11–13.) Defendant emphasizes that Plaintiff was not inside the RV when struck, his intent to re-enter it was not sufficiently immediate, and preparing to tow it was not sufficiently related to attempting to occupy it. (*Id.* 12–13.)

The Progressive Policy covers anyone "occupying" the RV, defined by the policy as meaning "In; Upon; or Getting in, on, out or off." (Progressive Policy 22, ECF No. 1-1.) Virginia caselaw considers "the totality of the circumstances," rather than a bright-line rule, to determine whether a person was occupying a vehicle. *See Bratton v. Selective Ins. Co. of Am.*, 776 S.E.2d 775, 781 (Va. 2015). Such an analysis considers factors like "the individual's proximity to the vehicle, the duration of time during which the individual acts, the particular actions taken, the situation in which the individual is acting, the motivation for the individual's actions . . . , and the purpose of the policy's coverage . . . ." *Id.* Courts interpret the word "upon" in relation to the word "occupying," meaning it should be "clear that to be 'upon' an insured vehicle is to have some connection with 'occupying' it." *Pennsylvania Mutual Casualty Ins. Co. v. Bristow*, 150 S.E.2d

14

125, 128 (Va. 1966). Courts have further clarified that "the ordinary understanding of the process of 'getting out of' a vehicle does not necessitate ongoing physical contact with that vehicle." *Bratton*, 776 S.E.2d at 780.

The Supreme Court of Virginia most recently addressed "occupancy" in *Bratton*. Bratton, a construction worker, was filling the front-end loader of a dump truck with asphalt, periodically exiting to check for spills. The Court pointed out that, shortly before being struck by a vehicle, the dump truck operator (1) lowered the dump truck bed; (2) left the truck cab and closed the door with the engine still running; and (3) walked at least nine feet to check near the rear tires for spills. *Id.* at 777. After establishing that the word "occupying" includes one alighting from or "getting out of" a vehicle, the Virginia Supreme Court prescribed a "totality of the circumstances" analysis to determine whether a person is "getting out of" the vehicle. After considering the totality of the circumstances in *Bratton*, the Court determined that the worker was "still vehicle-oriented and in the process of 'getting out of' the dump truck at the time of the collision." *Id.* at 777.

In contrast, the Supreme Court of Virginia found in *Bristow* that the injured party was not occupying the vehicle. 150 S.E.2d at 128. There, a Good Samaritan stopped to render aid to the owner of a stalled vehicle, leaning over the motor of the vehicle and reaching with his hands to examine the wires. *Id*. at 126. His legs were touching the car's bumpers when the car that he was examining was struck by another vehicle. *Id*. The impact threw Bristow into a ditch, injuring him. *Id*. At no point during the encounter did Bristow intend to enter the disabled vehicle. *Id*. The Court reasoned that the determinative question in that case was whether Bristow was 'upon' the stalled vehicle when he was injured. Ultimately the Court concluded that Bristow was not "upon" the stalled vehicle because his touching of the vehicle was merely incidental to his act of assisting the driver, and thus too attenuated from the definition of "occupying." *Id*. at 128.

15

Similarly, the Court in *Edwards* held that the Plaintiff, who was changing a flat tire on a friend's vehicle when struck by an uninsured motorist, was not occupying the car even though he was actively trying to remove the flat tire's lug nuts when struck. *Edwards*, 500 S.E.2d at 819. Edwards's actions did not constitute a physical presence in or on the insured vehicle, and his touching of the vehicle was only incidental to his attempts to change the tire. *Id*.

The present case more closely resembles *Bratton* than *Bristow* or *Edwards*. Here, Moore's touching of the vehicle remained "vehicle-oriented," whereas the actions of the plaintiffs in *Bristow* and *Edwards* were performed with no intention to occupy the respective vehicles and the plaintiffs had no history of recently entering the driver's area of the vehicle. In the present case, Moore occupied the vehicle several times prior to the accident and intended to reenter the vehicle once it was successfully towed. When he was struck by Longnecker, Plaintiff had both arms draped over the driver's side front tire of the RV and was actively placing a strap around the top and inner portion of the tire. (Joint Statement of Facts ¶ 31.) This touching was in the service of towing the RV, an act which this Court has already determined exerts control over the RV by tethering together the RV and the wrecker, and an act that involved the tow-truck operator (Plaintiff) entering and alighting from the vehicle throughout the exercise. Considering the totality of the circumstances, the Court finds that Moore did occupy the RV. He remained in close proximity to the vehicle, touching and entering it frequently. The process of examining the vehicle, securing lights on the vehicle, attaching the vehicle to the wrecker, adjusting the steering wheel of the vehicle, and otherwise preparing it for transportation was involved and careful, requiring a sustained period of time to complete. Further, Moore was acting to return the vehicle to an operable state, and most critically, he was acting to *move and control* the RV in order to achieve those ends. Taken together and viewed in light of the factors considered in *Bratton's* "totality of

the circumstances" analysis, these facts indicate that Moore was "occupying" the vehicle per the Progressive Policy and is therefore entitled to coverage under the language of the policy.

## V. CONCLUSION

Having determined that there is no genuine dispute of material fact and that Plaintiff is entitled to coverage under both Va. Code Ann. § 38.2-2206 and the Progressive Policy as a matter of law, the Court will deny the Defendant Progressive's Motion for Summary Judgment and grant Plaintiff's Motion for Summary Judgment. This Memorandum Opinion resolves all outstanding issues in this civil action, and thus represents the final judgment of the Court on this matter.

An appropriate Order shall issue.

/s/ Roderick C. Young
United States District Judge

Richmond, Virginia
Date: March 13, 2023